J-S74040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                      :          PENNSYLVANIA
                                        :

            v.                          :
                                        :
                                        :

RAMON WALL                       :
                                        :
               Appellant       :       No. 3618 EDA 2018

Appeal from the PCRA Order Entered November 30, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006889-2012

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED FEBRUARY 26, 2020**

Appellant, Ramon Wall, appeals from the order entered by the Court of Common Pleas of Philadelphia County dismissing his first petition filed under the Post Conviction Relief Act ("PCRA") seeking reinstatement of his direct appeal rights *nunc pro tunc*. We affirm.

The PCRA court sets forth the facts and procedural history of the case, as follows:

> On July 24, 2012, Ramon Wall ("Defendant") [hereinafter "Appellant"] entered into a negotiated plea to one count of stalking the victim, his former girlfriend Chemyra Johnson.[1] [The trial court] sentenced Appellant to a term of six to twenty-three months' incarceration and three years consecutive probation. On the same day, the trial court issued a protective order against Appellant on behalf of the victim. Appellant received credit for time served and was released from incarceration by an order of the trial court on November 15, 2012.

---

[*] Former Justice specially assigned to the Superior Court.

On March 2, 2013, Appellant was arrested for choking and repeatedly striking the same victim, his girlfriend, Chemyra Johnson. While in custody awaiting trial, Appellant sent the victim a letter threatening her physical safety. On June 10, 2013, Appellant appeared before Judge Genece Brinkley and pled guilty to the charge of Aggravated Assault. Judge Brinkley sentenced Appellant to five to ten years' incarceration followed by five years consecutive probation.

On June 13, 2013, the Commonwealth filed a Motion to revoke Appellant's probation. [After a Violation of Probation ("VOP") hearing, the trial court granted that Motion on July 11, 2013, and re-sentenced Appellant to three to six years' incarceration, to run consecutively to Judge Brinkley's five to ten year sentence. [On July 18, 2013, Appellant filed a counseled post-sentence motion to vacate and modify the sentence, which sought a reduction in sentence and the imposition of concurrent rather than consecutive sentences. The motion was denied by operation of law.]

On December 3, 2013, Appellant filed identical PCRA Petitions before the PCRA court and before Judge Brinkley [the latter being later dismissed] . . . alleging his trial counsel, Jeffrey Kilroy, Esq. was ineffective and that Appellant was improperly induced to plead guilty. On [September 28, 2017], Appellant filed [a supplemental] amended petition with the PCRA court alleging[, *inter alia*,] that Mr. Kilroy was ineffective for failing to inform Appellant that the trial court denied his Motion for Reconsideration of Sentence.

On April 27, 2018, Mr. Cotter appeared before the PCRA court and made oral arguments on the issue of ineffectiveness related to failure to file the appeal. On November 30, 2018, the PCRA court held an evidentiary hearing on this issue.

At this hearing, Mr. Kilroy testified that his failure to file an appeal on Appellant's behalf was the result of a discussion of strategy ultimately endorsed by Appellant, which favored the filing of a Motion for Reconsideration. Appellant testified that Mr. Kilroy did not discuss post-trial strategy with him.

The PCRA court ultimately found Mr. Kilroy's testimony credible as to the nature of his discussions of post-conviction strategy with the Appellant, denied Appellant's PCRA, and declined to reinstate

Appellant's appellate rights *nunc pro tunc*. (N.T. 11/30/18, at 47). Appellant filed this appeal on December 12, 2018.

PCRA Court Opinion, 8/14/19, at 1-3.

Appellant raises the following issue for our review:

Did the trial court err in denying Appellant an appeal *nunc pro tunc* from the sentence imposed at a violation of probation hearing due to ineffective assistance of counsel at the hearing?

Appellant's brief, at 2.

"[W]e review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." **Commonwealth v. Orlando**, 156 A.3d 1274, 1280 (Pa.Super. 2017) (quoting **Commonwealth v. Treiber**, 632 Pa. 449, 121 A.3d 435, 444 (2015)). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. **Commonwealth v. Abu–Jamal**, 720 A.2d 79, 99 (Pa. 1998). A PCRA court's legal conclusions, however, are reviewed *de novo*. **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011).

We presume that the petitioner's counsel was effective, and a petitioner bears the burden of proving otherwise. **Commonwealth v. Williams**, 732 A.2d 1167, 1177 (Pa. 1999). In assessing Appellant's ineffectiveness claim, we apply the well-settled test enunciated in **Strickland v. Washington**, 466 U.S. 668 (1984) and adopted in **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987):

To prevail on an ineffectiveness claim, appellant must establish: (1) the underlying claim has arguable merit; (2) no reasonable

- 3 -

basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

***Commonwealth v. Fears***, 86 A.3d 795, 804 (Pa. 2014). The failure to prove any one prong is cause alone for dismissal of the claim without the need to determine whether the other two prongs have been met. ***Commonwealth v. Basemore***, 744 A.2d 717 (Pa. 2000).

Appellant's ineffectiveness claim charges that VOP counsel improperly advised him regarding his appellate rights by advocating against the filing of a direct appeal, which, counsel maintained, would divest the VOP court of jurisdiction to grant Appellant's motion for reconsideration. This Court has recognized "it is evident that incorrect advice or failing to properly advise a client can be grounds for an ineffectiveness claim." ***Commonwealth v. Markowitz***, 32 A.3d 706, 716 (Pa.Super. 2011) (citing ***Commonwealth v. Lantzy***, 736 A.2d 564, 572 (Pa. 1999); ***Commonwealth v. Boyd***, 688 A.2d 1172, 1175 (Pa. 1997) (failure to properly explain the advantages and disadvantages of accepting or rejecting a plea offer may be ineffective assistance of counsel), *overruled on other grounds,* ***Commonwealth ex rel. Dadario v. Goldberg***, 565 Pa. 280, 773 A.2d 126 (2001)).

When consulting with a defendant about appellate rights, counsel must "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes." ***Commonwealth v. Green***, 168 A.3d 173, 176 (Pa.Super. 2017) (quoting ***Roe v. Flores-Ortega***, 528 U.S. 470, 478 (2000)). Prejudice is shown where

a petitioner can establish that, but for counsel's erroneous advice, he would have filed a direct appeal. ***Green***, 168 A.3d at 179. Upon satisfying the three-prong ineffectiveness test, a petitioner is entitled to the reinstatement of his direct appeal rights *nunc pro tunc*. ***Id.*** ***See also Markowitz***, 32 A.3d at 717.

Initially, we note Appellant fails to develop a requisite prejudice prong argument in his appellate brief, stating only, "The trial court's position stated on page 3 and 4 of its opinion that the defendant must show prejudice is erroneous." ***See*** Appellant's brief at 7-8.[1] For Appellant's failure to plead and prove the prejudice prong of the ***Strickland***/***Pierce*** test, waiver applies to this issue. Pa.R.A.P. 2119(a)-(b); ***See Commonwealth v. Steele***, 961 A.2d 786 (Pa. 2008) (holding when petitioner fails to properly plead or develop a prong, the petitioner is not entitled to relief and the court may find the claim waived for lack of development). Even if waiver did not apply, this appeal would still fail, as we discern no arguable merit to Appellant's claim of ineffective assistance of VOP counsel.

---

[1] In certain limited circumstances, including the actual or constructive denial of counsel, prejudice may be so plain that the cost of litigating the issue of prejudice is unjustified, and a finding of ineffective assistance of counsel *per se* is warranted." ***Commonwealth v. Rosado***, 150 A.3d 425, 429 (Pa. 2016). This exception applies in cases where counsel actually or constructively denied a defendant his right to appeal, such as where counsel neglects to file or perfect a requested appeal. ***Id***. at 430–431 (citing ***Lantzy***, 736 A.2d at 566. As discussed *supra*, however, the present case involves whether counsel rendered erroneous legal advice against filing a requested direct appeal, an issue for which we employ the three-prong ineffectiveness test. ***See Green***, ***supra***; ***Markowitz***, ***supra***.

Appellant maintains in his brief that VOP counsel supplied Appellant with erroneous legal advice regarding post-sentence and direct appeal rights that caused Appellant to abandon his initial request for a direct appeal. This is so, Appellant contends, because VOP counsel told Appellant that he "could either file an appeal or post sentence motions and that the chances of winning on appeal were slim. Counsel never informed [Appellant] . . . that even if counsel believed [Appellant] would not win on appeal [Appellant] still had the right to file an appeal." Appellant's brief, at 7.[2]

At the PCRA hearing, PCRA counsel asked VOP counsel, who had nine years' experience with the Defenders Association of Philadelphia at the time of the VOP hearing in question, about his consultation with Appellant:

> PCRA COUNSEL: The question I want to ask you is, after the hearing did you ever discuss Appellant's appeal rights with him, post-sentence rights – let's put it that way – his post-sentence rights with him after the hearing?
>
> VOP COUNSEL:    I did.
>
> Q:    Okay.  Where did you do that?

_____

[2] Appellant failed to articulate this claim in his counseled amended petition of September 28, 2017, in which he based the allegation of ineffectiveness only on VOP counsel's failure to notify Appellant that his post-sentence motion had been denied.

At the PCRA hearing, however, PCRA counsel developed for the court's consideration the discrete claim that counsel ineffectively deprived Appellant of proper consultation at the outset of the post-sentence phase by failing to discuss the pros and cons of pursuing only a post-sentence motion and foregoing a direct appeal.  PCRA counsel, therefore, preserved this claim below.

A:    In the booth after the hearing.  If I'm correct, His Honor was sitting in Courtroom 501 at the time.

Q:    Okay.  And what, if anything, did you discuss with him?

A:    So I knew – Mr. Wall had explained to me that he was unhappy with the fact that the sentence was ran [sic] consecutive to the negotiated sentence that he – that I got for him on the other case.  I explained to him that in my opinion, I didn't believe there was anything illegal about the Judge's sentence and, therefore, his chances of success on direct appeal to the Superior Court were very slim.

I believed that if he had a chance of getting, A, a reduced sentence or, B, a sentence ran [sic] concurrent, that his best option would be a motion to reconsider sentence.  And that was because of the content and some of the things that were brought out at the VOP hearing.

I explained to him that unlike a normal – what we call an active case – the post-sentence, the motion to reconsider sentence, does not toll the appeal period.  Therefore, if he chose to file an appeal before Judge Cohen ruled or considered his motion to reconsider sentence, Judge Cohen would lose jurisdiction to rule on a sentence.  And his only recourse would be a direct appeal.

And, once again, it was my advice that he would not be successful in that venture.

Q:    Okay.  So whose idea was it to file?  There was a motion to reconsider filed; is that correct?

A:    That is correct, at Mr. Wall's request.

Q:    And correct me if I'm wrong, but the docket shows no appeal was filed; is that correct?

A:    No, that is correct.

Q:    Even though you could've filed the post-sentence motion, the post-sentence motions, giving the Judge an opportunity of five to ten days to decide and take an appeal from there; is that correct?

A:    I could have done that; that is correct.  I did not do that.

Q:    Okay.  I have no further questions.

. . .

ASSISTANT DISTRICT ATTORNEY:  And why didn't you do that?

A:    Because, as I stated earlier, I believe because of what had occurred at the VOP hearing, no disrespect to His Honor, if His Honor had a chance to cool down, maybe he would have given Mr. Wall some reconsideration and maybe even reduced the sentence or agreed to run it concurrently with the sentence he was currently serving.

Q:    And, Mr. Kilroy, based on your advice, did Appellant agree with you and did not ask you to file an appeal?

A:    That is correct.  He did not ask me to file an appeal.  He asked me to file a motion to reconsider the sentence upon my advice.  That is what I advised him to do.

. . .

PCRA COUNSEL: Your advice was not to file an appeal; is that correct?

A:    Correct.  I believed it would be unsuccessful.

. . .

THE COURT:    Mr. Kilroy.  Do understand or do you recall at this point what had happened at the hearing that you though would make it more likely that I would reconsider rather than file an appeal?

. . .

A:    There was a letter that Mr. Wall wrote to the complainant while he was in custody that was attached to the . . . Commonwealth's motion to revoke probation.  Your Honor mentioned it.  However, the contents of that letter were disturbing.  And that's putting it lightly.

. . .

Your Honor, among many things, it said things like: I am going to hunt you down like a lion. I am going to break your hands. . . . Your Honor, I don't wish to go into it any further, but it was along those lines.

THE COURT: So what was your thought process, if you would, about why I meant — as a judge I would more likely reconsider my sentence because of that letter?

A: Your Honor, because I've been before you a couple of times. I know you'd be a fair jurist. And I think upon the initial reading of the letter – when I first read the letter, I was offended by it. And I Honestly –I want to help Mr. Wall. And I hope I did help him in what I did. And I just thought that Your Honor was a fair jurist.

And maybe after some time, after just sitting back and reflecting, that maybe you would say, 'Okay. Mr. Wall wrote this in a moment of anger, which is what I argued before Your Honor. And maybe I can cut him a break now that I calmed down.

. . .

THE COURT: Okay. That makes sense. Thank you Mr. Kilroy.

N.T. at 22-29.

PCRA counsel began argument first by positing that VOP counsel committed *per se* ineffectiveness by altogether failing to discuss Appellant's appeal rights. PCRA counsel conceded the trial court's observation, however, that such an argument would prevail only if the court credited Appellant's testimony that counsel never discussed his direct appeal rights:

PCRA COUNSEL: You have to accept the credibility of my client, Judge. I agree with that. So, there's a credibility issue here, one, the [VOP] attorney and one of the defendant's. Accepting my

- 9 -

client's credibility, the defense attorney had the obligation to discuss the appeal because the defendant was dissatisfied.

N.T. at 31-32.

The court did not credit Appellant's testimony in this regard, electing instead to credit VOP counsel's specific recollection that he discussed appellate rights and advised Appellant, in a face-to-face conversation immediately after sentencing, that, in his opinion, a direct appeal carried only a slim chance of vacating the consecutive sentences about which Appellant complained. It was based on counsel's advice, counsel stated, that Appellant retracted his request for a direct appeal. N.T. at 23-24.

PCRA counsel countered that, even if the court credited counsel's testimony, *Flores-Ortega*, *supra*, required counsel to discuss the "pros and cons" of a direct appeal:

> There are no cons to an appeal in this case because you take the case up to the Superior Court. If they say it's a reasonable sentence, it's over. The Superior Court can't give him more time [because Appellant was sentenced to a maximum sentence]. . . . So there's no con to this appeal. [He's] not going to get more time."

N.T. at 32. Counsel never advised Appellant of this fact, counsel maintained.

The PCRA court found, however, that VOP counsel identified a legitimate disadvantage to filing a direct appeal in the case *sub judice*. Specifically, VOP counsel advised Appellant that because a post-sentence motion for reconsideration of a revocation sentence does not toll the 30-day direct appeal

- 10 -

period,[3] timely filing the direct appeal while his post-sentence motion was pending would divest the VOP court of jurisdiction and thereby cause him to forego the better chance at a revised sentence run concurrently. N.T. at 24. Therefore, the court determined that VOP counsel reasonably discussed the pros and cons of filing a direct appeal during the pendency of a post-sentence motion in this matter, contrary to Appellant's assertion.

PCRA counsel responded that VOP counsel could have filed a post-sentence motion and, if the VOP court failed to grant reconsideration or withdraw sentence within 29 days, file a timely direct appeal on the 30th, and final, day of the Pa.R.Crim.P. 708 appeal period pertaining to revocation judgments of sentence. N.T. at 41.

The Court countered, however, that it had decided motions to reconsider revocation sentences on the 30th day "many times . . . . So the court cannot agree. But the court has no – the last time I did that was probably within the last month or two. It was done that last day that I ruled on the motion for reconsideration. So yes." N.T. at 44. The court, therefore, rejected PCRA counsel's contention that there were no disadvantages to filing a direct appeal,

---

[3] Like most other appeals, an appeal from a sentence imposed after revocation of probation must be filed within 30 days after imposition of the new sentence. *See* Pa.R.App.P. 903(a). In contrast to other sentencing situations in which the filing of a post-sentence motion extends the appeal period until after the motion has been decided, *see* Pa. R. Crim. P. 720(a)(2), the filing of a motion to modify a sentence imposed after revocation of probation will not toll the 30-day appeal period. Pa. R. Crim. P. 708(E). ***Commonwealth v. Flowers***, 149 A.3d 867, 871 (2016).

for one was the risk of divesting the trial court of jurisdiction to reconsider the sentence the moment the appeal is filed.

Given this record, and in consideration of governing authority, we discern no error with the PCRA court's determination that VOP counsel appropriately discussed with Appellant the pros and cons of pursuing a post-sentence motion for reconsideration of sentence and foregoing a direct appeal so as not to divest the trial court of jurisdiction. N.T. at 43-44. As such, we decline to find counsel provided constitutionally deficient consultation by rendering such advice.

Counsel's advice reflected not a misunderstanding or misrepresentation of relevant law, but, instead, counsel's reasonable opinion—informed by the particular facts of the case—that the better prospect for obtaining a revised sentence run concurrently rather than consecutively lay in a motion for reconsideration filed with the VOP court. When one considers our well-settled jurisprudence, moreover, declining discretionary review of consecutive sentences unless they are "so manifestly excessive in extreme circumstances that it may create a substantial question," *Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa.Super. 2013), we cannot say counsel's advice was unreasonable, particularly where the consecutive sentences here involved separate acts in which violence or threat of violence was involved.

Accordingly, as Appellant failed to show that counsel's advice improperly caused him to forego his appellate rights, we discern no error with the PCRA court's order denying relief.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/20

---

[4] To the extent Appellant presents a second aspect to his claim in which he argues counsel ineffectively failed to notify him of the denial of his post sentence motion, it is without merit. The record shows the VOP court denied the post sentence motion by operation of law, at which time Appellant's 30-day period to file a direct appeal would have already expired. Therefore, though we do not condone counsel's failure to notify Appellant of the denial of the motion, counsel may not be deemed ineffective where no prejudice flowed from the omission.